**Reversed and Remanded and Opinion filed July 23, 2013.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-11-00894-CV

---

## WILLIAM ADAM FLOWERS, Appellant

## V.

## LACEY FLOWERS, Appellee

---

**On Appeal from the 309th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2003-59521**

---

## O P I N I O N

This is an appeal from an order in a suit to modify the parent-child relationship. The father challenges the trial court's rulings regarding (1) modification in the terms of the final divorce decree relating to the parents' respective rights and duties concerning their minor children, (2) certain restrictions on the terms and conditions of access and possession, and (3) specific permanent injunctions determined by the court to be in the children's best interest. We reverse and remand for further proceedings.

# I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Lacey Flowers and appellee William Flowers were divorced in November 2004, after twelve years of marriage. They are the parents of three minor children: a son and twin daughters. In the final divorce decree, Lacey and William were appointed joint managing conservators of the children, but Lacey was granted the exclusive right to determine the children's primary residence in Harris County, Texas, and contiguous counties. Under this decree, Lacey also was granted five other important rights. Specifically, Lacey was given the right, after conferring with William, to do the following (1) consent to medical, dental, and surgical treatment involving invasive procedures, (2) consent to psychiatric and psychological treatment of the children, (3) represent the children in legal actions and to make other decisions of substantial legal significance concerning the children, (4) except as provided in Family Code section 264.0111, receive the services and earnings of the children, and (5) except when a guardian of the children's estates or a guardian or attorney ad litem has been appointed for the children, to act as an agent of the children in relation to the children's respective estates if a child's action is required by a state, the United States of America, or a foreign government. Lacey also was granted the right, subject to William's agreement, to consent to the marriage of the children or their enlistment in the armed forces of the United States. In this opinion, we will refer to the six rights mentioned in the two prior sentences collectively as the "Six Parental Rights."

William filed a motion to modify the parent-child relationship in February 2009, asking the trial court to grant him the exclusive right to determine the children's primary residence as well as the exclusive rights listed in Family Code section 153.132, which includes all the of the Six Parental Rights. In addition, William sought (1) modification of the terms and conditions for access to or

2

possession of the children so that William and Lacey would have possession of the children under a standard possession order and (2) termination of his child-support obligation and the imposition of a child-support obligation on Lacey.

Lacey filed a counter-petition in which she requested various modifications to the terms and conditions for access to or possession of the children. Lacey sought modification so that she would be granted the right to consent to psychiatric or psychological treatment of the children without consulting with William or obtaining William's agreement. Lacey also requested an increase in child support as well as permanent injunctive relief.

The issue of primary residence was tried before a jury. By agreement of the parties, an associate judge presided over the jury trial. The only question submitted to the jury was whether the order that designates Lacey as the conservator who has the exclusive right to designate the children's primary residence should be modified to appoint William as the conservator who has that exclusive right. The jury answered "no" as to each of the children.

Thereafter, other issues were tried to the bench. Under the trial court's final order:

- Lacey retained the exclusive right to determine the children's primary residence, but the geographic restriction on this right was removed.

- Lacey's Six Parental Rights, which under the divorce decree required consultation with William or William's agreement, were changed to exclusive rights not requiring consultation with William or his agreement.

- Neither parent may designate Jim Evans (a man William began dating in 2007 and living with in 2008) or a person with whom that parent has a dating relationship to pick up or return the children unless the other parent agrees in writing that Jim Evans or the third party with whom the parent has a dating relationship may pick up or return the child.

3

- William is permanently enjoined from leaving or placing the children in the care of any person not related to them by blood or adoption without the prior written approval of Lacey.

- William is permanently enjoined from appointing any person not related to them by blood or adoption to pick up or return the children to Lacey without Lacey's prior written approval.

William appeals from the trial court's final order.

## II. ISSUES AND ANALYSIS

In his first three appellate issues, William challenges the trial court's removal of the geographic restriction on Lacey's exclusive right to determine the children's primary residence. In his fourth issue, William challenges the trial court's modification of the Six Parental Rights to make them exclusive rights not requiring Lacey's consultation with William or his agreement. Under his fifth, sixth, and seventh issues, William challenges the restriction on whom William may designate to pick up or return the children as well as the permanent injunction.

A trial court may modify the provisions of the divorce decree that provide the terms and conditions of conservatorship or that provide for the possession of or access to a child, if modification would be in the best interest of the child and the circumstances of the child, a conservator, or other party affected by the order have materially and substantially changed since the rendition date of the divorce decree.[1] *See* Tex. Fam. Code Ann. § 156.101(a)(1) (West 2013). We review a trial court's decision to modify an order regarding conservatorship or the terms of possession of and access to a child under an abuse-of-discretion standard. *See Baltzer v. Medina*, 240 S.W.3d 469, 474–75 (Tex. App.—Houston [14th Dist.]

---

[1] The divorce decree was not based on a mediated or collaborative law settlement agreement.

2007, no pet.). Likewise, we review a trial court's order granting a permanent injunction under an abuse-of-discretion standard. *See Jim Rutherford Investments, Inc. v. Terramar Beach Cmty. Ass'n*, 25 S.W.3d 845, 848 (Tex. App.—Houston [14th Dist.] 2000, pet. denied). Generally, the test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles or whether the trial court acted arbitrarily or unreasonably. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Under an abuse-of-discretion standard, legal and factual insufficiency are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion. *See Baltzer*, 240 S.W.3d at 475. There is no abuse of discretion as long as some evidence of a substantive and probative character exists to support the trial court's decision. *Id.*

## A. Did the trial court abuse its discretion by deleting the geographic restriction on Lacey's exclusive right to determine the children's primary residence because Lacey did not seek that relief and such a request was not tried by consent?

In his first issue, William asserts the trial court abused its discretion by removing the geographic restriction on Lacey's exclusive right to determine the children's primary residence because that relief was neither requested nor tried by consent.[2] The Texas Rules of Civil Procedure applicable to the filing of an original lawsuit apply to Lacey's petition to modify. *See* Tex. Fam. Code Ann. § 156.004

---

[2] This case involves issues regarding the best interests of three minor children. *See* Tex. Fam. Code Ann. § 156.101(a)(1). On appeal, Lacey concedes that the trial court erred by removing the geographic restriction on her exclusive right to determine the children's primary residence. An appellee's concession of a legal issue involved in an appeal does not relieve this court of its obligation to independently determine whether the appellee's concession is based on sound analysis. *See Sibron v. New York*, 392 U.S. 40, 58, 88 S. Ct. 1889, 1900, 20 L.Ed.2d 917 (1968); *Saldano v. State*, 70 S.W.3d 873, 884 (Tex. Crim. App. 2002); *Texas Farmers Ins. Co. v. Cameron*, 24 S.W.3d 386, 398, n.2 (Tex. App.—Dallas 2000, pet. denied); *Jackson Hotel Corp. v. Wichita Cnty. Appraisal Dist.*, 980 S.W.2d 879, 881 n.3 (Tex. App.—Fort Worth 1998, no pet.); *Haas v. Voight*, 940 S.W.2d 198, 201 & n.1 (Tex. App.—San Antonio 1996, writ denied).

(West 2013). Therefore, the trial court's judgment must conform to the pleadings; however, if issues not raised by the pleadings are tried by express or implied consent of the parties, these issues will be treated as if they had been raised by the pleadings. *See Baltzer*, 240 S.W.3d at 476.[3]

Pleadings must give reasonable notice of the claims asserted. *SmithKline Beecham Corp. v. Doe*, 903 S.W.2d 347, 354–55 (Tex. 1995). As a reviewing court, we are to liberally construe the petition to contain any claims that reasonably may be inferred from the specific language used in the petition and uphold the petition as to those claims, even if an element of a claim is not specifically alleged. *See id.* In making this determination, however, we cannot use a liberal construction of the petition as a license to read into the petition a claim that it does not contain. *Moneyhon v. Moneyhon*, 278 S.W.3d 874, 878 (Tex. App.—Houston [14th Dist.] 2009, no pet.). The petition must give fair and adequate notice of the claims being asserted, and if we cannot reasonably infer that the petition contains a given claim, then we must conclude the petition does not contain the claim. *See SmithKline Beecham Corp.*, 903 S.W.2d at 354–55.

In her petition, Lacey did not request any modification to the geographic restriction on her exclusive right to determine the children's primary residence. Nonetheless, in its final order, the trial court deleted this restriction. Therefore, the final order did not conform to the pleadings, and the trial court erred in granting such relief unless the issue was tried by consent. *See* Tex. R. Civ. P. 301; *Moneyhon*, 278 S.W.3d at 878. If issues not raised by the pleadings are tried by express or implied consent of the parties, these issues shall be treated as if they had

---

[3] On appeal, Lacey cites *In re B.J.H.T.*, No. 12-09-00157-CV, 2011 WL 721511, at *1–2 (Tex. App.—Tyler Mar. 2, 2011, pet. denied) (mem. op.). But, this opinion conflicts with this court's opinion in *Baltzer*, so we follow *Baltzer* rather than *In re B.J.H.T. Compare In re B.J.H.T.*, 2011 WL 721511, at *1–2, *with Baltzer*, 240 S.W.3d at 476. *See Glassman v. Goodfriend*, 347 S.W.3d 772, 781–82 & n.8 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (en banc).

been raised by the pleadings. *See* Tex. R. Civ. P. 67, 301; *Baltzer*, 240 S.W.3d at 476. To determine whether the issue was tried by consent, we must examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *Greene v. Young*, 174 S.W.3d 291, 301 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). The record does not reflect that the geographic-restriction issue was tried by consent. *See id.* We conclude the trial court abused its discretion by removing the geographic restriction on Lacey's exclusive right to determine the children's primary residence because Lacey did not request this relief in her petition and the geographic-restriction issue was not tried by consent. *See Baltzer*, 240 S.W.3d at 476. Accordingly, we sustain the first issue.[4]

## B. Did the trial court abuse its discretion by modifying the Six Parental Rights?

In his fourth issue, William asserts that the trial court abused its discretion when it modified Lacey's Six Parental Rights so that Lacey could exercise each of these rights without consulting with William or obtaining his agreement. Under the divorce decree, Lacey was required to consult with William as to five of these rights and to obtain William's agreement as to one of these rights. William asserts that the modification of the Six Parental Rights was neither requested in Lacey's petition nor tried by consent. William also asserts that there is no evidence that supports the granting of this relief.

As to each of the Six Parental Rights except the right to consent to psychiatric and psychological treatment of the children (hereinafter collectively, the "Five Parental Rights"), Lacey did not request any modification in her petition. Nonetheless, in its final order, the trial court modified the Five Parental Rights.

---

[4] Based on our disposition of the first issue, we need not and do not address the second and third issues.

Therefore, the final order did not conform to the pleadings, and the trial court erred in granting such relief unless the issue was tried by consent. *See* Tex. R. Civ. P. 301; *Moneyhon*, 278 S.W.3d at 878. On appeal, Lacey argues that her petition and William's petition raised the issues of how and to whom the Six Parental Rights should be allocated between Lacey and William, and therefore, the pleadings support the trial court's modification of the Six Parental Rights. In his petition, William alleged that the circumstances of the children, a conservator, or other party affected by the divorce decree have materially and substantially changed since the rendition of the divorce decree and that it is in the children's best interests that the Six Parental Rights be modified so that William had these rights exclusively. But, in her answer, Lacey denied this allegation, and, in her petition, Lacey did not seek any modification regarding the Five Parental Rights. Lacey did seek a modification as to the right to consent to psychiatric and psychological treatment of the children. On this record, we conclude that, as to the Five Parental Rights, the final order did not conform to the pleadings. *See Moneyhon*, 278 S.W.3d at 878; *Baltzer*, 240 S.W.3d at 476.

If issues not raised by the pleadings are tried by express or implied consent of the parties, these issues shall be treated as if they had been raised by the pleadings. *See Baltzer*, 240 S.W.3d at 476. As noted, in determining whether the issue was tried by consent, we scrutinize the record for evidence of trial of the issue. *See Greene*, 174 S.W.3d at 301. The record does not reflect that the issue of whether the Five Parental Rights should be modified was tried by consent. *See id*. We conclude the trial court abused its discretion by modifying the Five Parental Rights because Lacey did not request this relief in her petition and the issue of whether the Five Parental Rights should be modified was not tried by consent. *See Baltzer*, 240 S.W.3d at 476. Accordingly, we sustain the fourth issue as to

8

modification of the Five Parental Rights.

As to the right to consent to psychiatric and psychological treatment of the children, Lacey expressly sought modification of this portion of the divorce decree in her petition. Therefore, the trial court's action was supported by Lacey's pleadings. Under the divorce decree, Lacey already had the right to consent to psychiatric and psychological treatment of the children after consulting with William, and William did not have the right to consent to such treatment without Lacey's agreement. Essentially, Lacey was required to confer with William before making a decision, but the decision was hers to make regardless of William's agreement or response. By contrast, William had no authority on his own to consent to psychiatric or psychological treatment for the children; he had only the right to seek Lacey's agreement regarding these issues. Under the trial court's final modification order, William lost only the right to be consulted by Lacey before she makes a decision as to whether to consent to the psychiatric or psychological treatment of the children. Even under the final modification order, William still has, among other rights, (1) the right to information from Lacey concerning the health and welfare of the children, (2) the right of access to the children's medical and psychological records, and (3) the right to consult with a psychologist of the children.

The record contains evidence of bad blood and failure to communicate between Lacey and William. Almost immediately after the divorce, the parties resorted to communicating only by email because of difficulties they had in interacting with each other. Following one incident that led to a two-year protective order against William, the parties stopped communicating altogether. At that point, Lacey's parents attempted to facilitate William's pick ups and returns of the children. The record reflects that Lacey, out of distrust, often would record

her interactions with William. William admitted that he routinely avoids interaction with Lacey unless necessary.

After reviewing the record under the applicable standard of review, we conclude the trial court did not abuse its discretion in determining that the circumstances of the children or a conservator have materially and substantially changed since rendition of the divorce decree and that it is in the children's best interests to modify the decree to give Lacey the exclusive right to consent to psychiatric and psychological treatment of the children. *See Swaab v. Swaab*, 282 S.W.3d 519, 534 (Tex. App.—Houston [14th Dist.] 2008, pet. dism'd w.o.j.) (holding that the trial court did not abuse its discretion in granting mother the exclusive right to consent to all psychiatric and psychological treatment of the child); *Baltzer*, 240 S.W.3d at 477 (holding that trial court did not abuse its discretion in granting father exclusive right to consent to child's psychiatric and psychological treatment). William has not shown that the trial court abused its discretion by modifying the divorce decree in this respect. Accordingly, we overrule the fourth issue as to this modification.

**C.     Did the trial court abuse its discretion by adding the restriction against William relating to third-party pick ups and returns of the children because Lacey did not seek that relief in her petition?**

In its final order, the trial court added a restriction that William may not designate Jim Evans or a person with whom William has a dating relationship to pick up or return a child unless Lacey agrees in writing that this person may pick up or return the child (hereinafter, the "Restriction"). Under his fifth issue, William challenges the trial court's modification of the divorce decree to add the Restriction. William asserts that, in Lacey's petition, she did not ask the trial court to add the Restriction and that this issue was not tried by consent. But, in her petition, Lacey requested that the trial court order William "not to leave the

10

children in the care of any male not related to the children by blood or marriage at any time." The record reflects that Jim Evans is a male not related to the children by blood or marriage[5] and that any other person with whom William would have a dating relationship would be a male not related to the children by blood or marriage. In her petition, though Lacey did not specifically request that the trial court add the Restriction, she did request broader relief that encompasses adding the Restriction. We conclude that Lacey requested this relief in her petition, and that, as to adding the Restriction, the final order conformed to the pleadings. *See WorldPeace v. Comm'n for Lawyer Discipline*, 183 S.W.3d 451, 457–58 (Tex. App.—Houston [14th Dist.] 2005, pet. denied). Therefore, we overrule William's fifth issue to the extent it is directed to the Restriction.

**D.** **Did the trial court abuse its discretion by adding the restriction against William relating to third-party pick ups and returns of the children?**

Under his sixth issue, William asserts that the trial court abused its discretion in adding the Restriction because that ruling is not supported by legally or factually sufficient evidence. Although there is no evidence that Lacey had ever been in a dating relationship since the parties' divorce, there is some evidence in the record that Lacey was concerned and uncomfortable with the children meeting others with whom William had a dating relationship.

Since the divorce, Lacey and the children have made their home with Lacey's parents, in their house. Lacey testified that Jim frequently interfered

---

[5] William testified that Jim Evans and he were married under Connecticut law in 2010, but under Texas law this event has no legal effect. *See* Tex. Const. art. I, § 32; Tex. Fam. Code § 6.204 (West 2013); *Ross v. Goldstein*, 203 S.W.3d 508, 514 (Tex. App.—Houston [14th Dist.] 2006, no pet.); *In re Marriage of J.B. and H.B.*, 326 S.W.3d 654, 662–63, 665 (Tex. App.—Dallas 2010, pet. filed). On appeal, William acknowledges that he is not recognized as being married to Jim under Texas law.

11

during drop-offs of the children at her parents' home while she and William were trying to speak. According to Lacey, Jim was very forceful about putting himself in "our space," referring to her or her parents, or "her space." She stated that she repeatedly would ask Jim to stay away from her but that he would not, and he intentionally would come and sit next to her at the children's events. Lacey's family members gave similar accounts of Jim's behavior.

Lacey's mother Linda testified to experiencing similar treatment from Jim at a swim meet. Lacey's father Bill testified that many times Jim and Jim's children would come with William to the house when dropping the Flowers children off after visitation. According to Bill, on these occasions, Jim often would step in front of William to speak to Lacey while William would stand back. The exchanges became so troubling and problematic for Lacey and her parents that Bill told Jim to stay off of his property. Bill explained that his directives had no deterrent effect on Jim. Bill described how on two or three occasions after Bill had asked Jim to leave the property, Jim, a lawyer, would say that he had a right to be on the property because he was on an easement. Even William acknowledged that when Jim is present, things are hostile. William admitted that picking up or dropping off the children at Lacey's home were very emotional times. These intervals in which possession of the children was transferred from one parent to the other tended to be fraught with tension, controversy, and unpleasantness, all of which necessarily occurred in the children's presence. At one point, in an effort to prevent future confrontations, the parties agreed that Lacey and her parents would stay inside the house when the children were dropped off. But, the communications between William and Lacey continued to be strained. William admitted that at the time of trial, he and Lacey were only able to communicate by email.

Lacey testified that Jim is bullish to her. Lacey explained that when William

12

was not present during the interactions or exchanges with the children, Jim had tried to override her authority with her children. Lacey stated that in these situations Jim tried to establish authority over her children. Lacey recounted one incident in which Jim, not William, brought the twin girls to their ballet recital and there was a confrontation between Lacey and Jim about who would take the little girls to the bathroom to change their clothes before leaving the recital. Jim insisted that he would take them, over Lacey's vehement objection.

In yet another incident, Jim and Lacey's family became confrontational at the swim meet of the Flowers son. Both sides gave differing accounts of what transpired. Lacey's seventy-four-year-old aunt came in physical contact with Jim. Lacey testified that Jim landed on the ground and that Jim's fall was faked. Jim filed a civil lawsuit against Lacey's aunt, alleging the elderly woman had assaulted him. The Flowers son admitted to his therapist that the incident between his parents and Jim at the swim meet factored into his decision to drop out of swimming during that period.

On another occasion, one of the Flowers daughters had been injured, and Lacey had notified William that the girl had been taken to the emergency room. William and Jim arrived at the hospital together accompanied by Jim's children. Jim insisted on remaining in the observation room with the injured child rather than avoiding the conflict with Lacey. Jim testified that he was asked to leave but he did not and he saw nothing inappropriate about his presence in the room while the child was being examined.

The record shows a history of animosity and hostility between Lacey and William that, even by William's account, was exacerbated by Jim's presence, and, on occasion, escalated into combative situations. An expert appointed by the trial court opined that William and Jim contributed to conflicts with Lacey in ways that they did not seem to understand. Jim testified that he would not participate as

13

much when Lacey was around if his efforts would help reduce conflicts.

A child's best interest is always the primary consideration of the court in determining issues of possession and access. Tex. Fam. Code Ann. § 153.002 (West 2013). The record contains evidence of troubling pick up and return problems caused by Jim and some evidence that William left the children alone with Jim and that the children did not feel comfortable being alone with Jim. The record contains substantial evidence that Jim's presence, particularly around Lacey and her family members, created an elevated level of stress, anxiety, and visible tension that was not in the children's best interest. *See Capello v. Capello*, 922 S.W.2d 218, 220 (Tex. App.—San Antonio 1996, no writ) (concluding the trial court, in considering the children's best interests, had discretion to restrict father's girlfriend and the girlfriend's family members from picking up and dropping off children during father's periods of possession). Lacey and the children live with her parents in her parents' home. The evidence showed that Lacey and her family experienced friction, discord, and conflict with William and Jim, difficulties that seem to have been heightened during the pick ups and returns of the children. During these episodes, multiple actors were involved, which only increased the likelihood of conflict and tension. Under these circumstances, the trial court acted within its discretion in placing restrictions on the individuals involved in the pick ups and returns of the children as a means of addressing these difficulties, minimizing the opportunities for discord and confrontation, and protecting the children from hostile encounters and disquieting episodes. *See id. See also Peck*, 172 S.W.3d at 32–33 (affirming order enjoining both parties, during respective periods of possession, from permitting persons with whom the parties might have an intimate or dating relationship from remaining overnight in the same residence or lodging); *Denson v. Denson*, 11-02-00083-CV, 2003 WL 1748351, at *2–3

14

(Tex. App.—Eastland 2003, no pet.) (affirming trial court's order restricting, based on children's best interests, a father's roommate's presence at a home when the father had possession of the children) (mem. op.); *Moreno v. Perez*, 363 S.W.3d 725, 739 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (affirming order that children's visitation with mother take place outside the presence of any unrelated adult companion based on the children's best interest). We conclude the record evidence is legally and factually sufficient to support the trial court's implied conclusion that it is in the best interests of the children to add the Restriction. *See Capello*, 922 S.W.3d at 220. After reviewing the record under the applicable standard of review, we conclude the trial court did not abuse its discretion in determining that the circumstances of the children or a conservator have materially and substantially changed since rendition of the divorce decree and that it is in the children's best interests to modify the decree to add the Restriction. *See id.* Accordingly, we overrule William's sixth issue to the extent it is directed at the Restriction.[6]

**E.      Did the trial court abuse its discretion by issuing the permanent injunction against William?**

In its final order, the trial court permanently enjoined William from engaging in the following conduct:

> (1) leaving or placing the children in the care of any person not related to the children by blood or adoption without Lacey's prior written approval, and

> (2) appointing any person not related to the children by blood or adoption to pick up or return the children to Lacey without her prior written approval (hereinafter, the "Injunction")

The trial court did not issue an injunction against Lacey. Under his sixth issue,

---

[6] In the seventh issue and the arguments thereunder, William attacks the trial court's injunction, but he does not attack the Restriction. Therefore, we need not address the seventh issue as to the Restriction.

William asserts that the trial court abused its discretion in issuing the Injunction because that ruling is not supported by legally or factually sufficient evidence.[7]

The Injunction applies to all persons not related to the children by blood or adoption and effectively would prevent William from separating from any of the children during his periods of possession without Lacey's permission. The second item of the Injunction, regarding pick up and return of the children for periods of possession, seems unnecessary in light of the first item of the Injunction, regarding care by any unrelated person. In any event, the Injunction is broader than the Restriction and is not justified by the evidence in the record, which does not show that such an onerous ban is in the best interest of the children. We conclude that the trial court abused its discretion by issuing the Injunction.[8] *See Moreno*, 363 S.W.3d at 739–40 (holding that a restriction on "any unrelated adult" was overly broad and unsupported by the evidence). Accordingly, we sustain William's sixth issue as to the Injunction.[9]

## F. Is it proper for this court to affirm as modified, based upon Lacey's proffer of a modified injunction?

On appeal, Lacey states that, while she "concedes that the existing injunction precluding *any person* from providing care for the children during William's possession is too broad, she does suggest that a modified injunction which precludes Jim Evans or any *unrelated male* with whom William has a dating

---

[7] We presume for the sake of argument that Lacey requested this relief in her petition.

[8] On appeal, Lacey concedes that the first part of the Injunction is too broad, and she seems to suggest that the trial court erred in issuing the second part of the Injunction. Nonetheless, even presuming that Lacey has conceded that the trial court erred in issuing the injunction, such a concession would not relieve this court of its obligation to independently determine whether a party's concession is based on sound analysis. *See Sibron*, 392 U.S. at 58, 88 S. Ct. at 1900; *Saldano*, 70 S.W.3d at 884; *Texas Farmers Ins. Co.*, 24 S.W.3d at 398, n.2; *Jackson Hotel Corp.*, 980 S.W.2d at 881 n.3; *Haas*, 940 S.W.2d at 201 & n.1.

[9] Because of this ruling, we need not and do not address the fifth issue or the seventh issue regarding the Injunction.

relationship [sic] would remain justified in light of the evidence presented."[10] Lacey suggests that this court should modify the trial court's injunction to make it narrower in scope and to delete the second item as unnecessary in light of the Restriction, and then affirm the Injunction as modified. William does not agree that this relief is appropriate. In this context, this court may not sit as a factfinder and determine in the first instance what injunctive relief, if any, is appropriate under the facts and circumstances of this case. *See Shook v. Gray*, 381 S.W.3d 540, 542 (Tex. 2012) (per curiam).

We conclude that the trial court abused its discretion in issuing the Injunction and that this ruling must be reversed. Nonetheless, a remand is necessary for the trial court to consider what other injunctive relief, if any, is warranted and supported by Lacey's petition and by the evidence.[11] *See* Tex. R. App. P. 43.3; *Shook*, 381 S.W.3d at 542; *Van Heerden v. Van Heerden*, 321 S.W.3d 869, 874–75 (Tex. App.—Houston [14th Dist.] 2010, no pet.); *Webb v. Glenbrook Owners Ass'n, Inc.*, 298 S.W.3d 374, 385–90 (Tex. App.—Dallas 2009, no pet.) (reversing injunctive relief and remanding for further proceedings when the relief granted was erroneous but injunctive relief was requested in the pleadings and there was evidence in the record regarding the issue).

### III. CONCLUSION

The trial court abused its discretion by removing the geographic restriction on Lacey's exclusive right to determine the children's primary residence and by modifying the Five Parental Rights because Lacey did not request this relief in her

---

[10] (emphasis in original).

[11] William cites *Funes v. Villatoro*. *See* 352 S.W.3d 200, 214, 218 (Tex. App.—Houston [14th Dist.] 2011, pet. denied). The *Funes* court reversed the trial court's permanent injunction and rendered a take-nothing judgment as to injunctive relief. *See id.* But, the *Funes* case is not on point because in that case the plaintiff did not seek any injunctive relief in his pleadings. *See id.* at 214.

17

petition and these issues were not tried by consent. The trial court did not abuse its discretion by modifying the divorce decree (1) to give Lacey the exclusive right to consent to psychiatric and psychological treatment of the children, and (2) to add the Restriction. But, the trial court did abuse its discretion by issuing the Injunction. Accordingly, we reverse the trial court's final order, and remand to the trial court with instructions for the trial court to render a new modification order that is the same as the prior modification order except that, in the new order, (1) the geographic restriction on Lacey's exclusive right to determine the children's primary residence is not modified; (2) the Five Parental Rights are not modified; and (3) the trial court does not issue the Injunction. The trial court also may issue any injunctive relief other than the Injunction that it may deem appropriate under the applicable law and that is supported by Lacey's petition and by the evidence.


/s/    Kem Thompson Frost
Justice


Panel consists of Justices Frost, Christopher, and Jamison.