**Affirmed and Memorandum Opinion filed April 21, 2016.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00481-CV

**LUCIDALIA CHAVEZ, Appellant**

**V.**

**WALTER CHAVEZ, Appellee**

**On Appeal from the 309th District Court
Harris County, Texas
Trial Court Cause No. 2012-60726**

## M E M O R A N D U M   O P I N I O N

In this appeal from a divorce decree, we address a mother's contention that the evidence is legally and factually insufficient to support the trial court's decision to give the father of her children the exclusive right to determine the children's primary residence and that the trial court abused its discretion in awarding a disproportionate amount of the community property to the father. We affirm the divorce decree.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Lucidalia Chavez (Mother) and Walter Chavez (Father) were married with two children.  Mother filed an original petition for divorce, in which she requested that the trial court designate her as the children's sole managing conservator with the exclusive right to determine the children's primary residence.  She also sought a just and right division of the community property.

At the bench trial, the court heard evidence showing the following:

- Mother was the primary caretaker of the children, and Father supported the family by working two jobs.

- Mother and Father had extra-marital romantic relationships.

- Mother admitted having a relationship with another man for six years and also said she had had an affair with a mechanic, even though she had not.

- After hearing this news, Father moved out of the home and had a relationship with another woman that resulted in the birth of a child.

- The parties remained married throughout this time. They eventually reconciled and resumed living together, with Father continuing to support the child from his extra-marital relationship.

Mother testified that she deserved the exclusive right to determine the children's primary residence because Father worked all the time, was verbally abusive, and hit the children with a belt.  Father testified he wanted the exclusive right to designate the children's primary residence because Mother drives with the children in the car after drinking, Mother drinks around the children at home, and Mother brings men over to the house.  In addition to evidence related to Mother's parenting, Father's counsel questioned witnesses regarding Mother's immigration status, inability to speak English, lack of a Texas driver's license, and lack of a Social Security Number.[1]  Mother objected to this evidence on relevance grounds.

---

[1] The trial court sustained Mother's objection to Father's direct questions about Mother's immigration status, but allowed into evidence testimony that Mother claims was introduced to

2

Father testified that he had temporary protected status, which is a legal immigration status in the United States. Father also testified that he speaks English, and has a valid driver's license and Social Security Number.

Mother and Father both submitted inventories listing the marital home, furnishings, two cars, and Father's business as community property. Each party listed debt to the Internal Revenue Service (IRS) and Occupational Safety and Health Administration (OSHA) as community liabilities.

The trial court granted the divorce, awarding Father the exclusive right to designate the children's primary residence. The trial court divided the community property between the parties.[2]

## II. ANALYSIS

### A. Custody Determination

In her first issue, Mother asserts that the evidence is legally and factually insufficient to support the trial court's decision that Father should be given the exclusive right to determine the children's primary residence. Under this issue, Mother also asserts that the trial court reversibly erred in admitting or considering evidence relating to her immigration status, nationality, and ethnicity.

___

"emphasize" her nationality, ethnicity, and undocumented legal status, including evidence that Mother lacked a Texas driver's license, did not speak English, had attempted to marry her cousin, and failed to produce tax returns. The trial court also admitted testimony that Mother's employer pays her in cash, Mother's employer does not keep employment records, Mother's employer does not intend to report Mother as an employee, and Mother's employer does not give Mother W2 forms. The evidence also showed that Father filled out his tax returns as "single" rather than "married."

[2] In Mother's third issue, she asserts that the trial court erred in failing to make findings of fact and conclusions of law. After we abated this appeal, the trial court signed findings of fact and conclusions of law. Accordingly, Mother's third issue is moot in light of the trial court having issued findings of fact and conclusions of law. *See Uluh v. Uluh*, No. 14-09-00394, 2011 WL 167268, at *1 n.1 (Tex. App.—Houston [14th Dist.] Jan. 20, 2011, pet. denied) (mem. op.).

1. *Sufficiency of the Evidence*

Mother asserts on appeal that the evidence is insufficient to support the trial court's determination that it is in the children's best interest for Father to be given the exclusive right to determine the children's primary residence because (1) any evidence relating to Mother's status as an undocumented immigrant does not relate to the children's best interests, (2) Mother was the primary caretaker of the children, (3) any evidence of Mother's drinking was suspect and self-serving, (4) Father works long hours and testified he would rely on his mother to help him care for the children, and (5) Father advocated physical discipline for the children.

We review a trial court's decision on custody, control, possession, and visitation matters using an abuse-of-discretion standard. *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982); *Flowers v. Flowers*, 407 S.W.3d 452, 457 (Tex. App.—Houston [14th Dist.] 2013, no pet.). A trial court abuses its discretion if it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Flowers*, 407 S.W.3d at 457. Under an abuse-of-discretion standard, legal and factual insufficiency are not independent grounds of error, but rather are relevant factors in assessing whether the trial court abused its discretion. *Id.* There is no abuse of discretion as long as some evidence of a substantive and probative character exists to support the trial court's exercise of its discretion. *Id.*

In determining issues of conservatorship and possession and access, the primary consideration is always the best interests of the child. *See* Fam. Code Ann. § 153.002 (West, Westlaw through 2015 R.S.); *Lenz v. Lenz*, 79 S.W.3d 10, 14 (Tex. 2002). A court may use the following non-exhaustive list of factors to determine the children's best interests: (1) the desires of the children; (2) the emotional and physical needs of the children now and in the future; (3) the emotional and physical danger to the children now and in the future; (4) the

4

parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the children; (6) the plans for the children by the individuals seeking custody; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not proper; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976); *Cain v. Cain*, No. 14-07-00114-CV, 2007 WL 4200638, at *3 (Tex. App.—Houston [14th Dist.] Nov. 29, 2007, no pet.) (mem. op.).

Throughout the course of the children's lives, Mother generally cared for the children while Father worked two jobs to support the family. Father owns a roofing company, W. M. Contractors, and also worked in the evenings a few days per week as a bartender. At trial Father testified that if he received the exclusive right to designate the children's primary residence, he would quit his job bartending and rely on his mother to help him with childcare while he was working at his roofing company. Mother had primary custody of the children at the time of trial and she worked part-time cleaning houses.

Mother testified Father hit the children with a belt. According to Mother, the last time Father hit one of the children with a belt was two years before trial. Father admitted he hit the children with a belt twice, once after one of the children kicked their mother, and once after one of the children gave the other child a black eye. Mother testified she was concerned for the children's safety when they were with Father and that they cried constantly and did not want to go with him. Mother also testified that after spending time with Father the children would act aggressively toward her and say they wanted to be in Father's possession instead of Mother's.

Mother admitted bringing different men over to the house and kissing them

5

in front of the children, which she admitted was not good for the children. Mother admitted that on at least one occasion, one of these men slept in bed with her and her son. Mother admitted that this incident had a negative effect on her son and harmed his development. Several witnesses, including witnesses called by Mother, testified about problems with Mother's drinking. These witnesses testified that Mother was drunk around the children and on multiple occasions drove a vehicle while she was drunk, with the children in the vehicle. Father also testified regarding specific incidences of Mother's intoxication. According to Father, he wanted Mother to get help and asked the trial court to find Mother help through Alcoholics Anonymous or some other organization.

The record also reveals that Mother would drive without a driver's license,[3] Mother asked witnesses to fabricate affairs with Father and to testify about those fabricated affairs, and Mother spread ashes in front of Father's business in an attempt to use witchcraft to harm him.

Based on the evidence, the trial court reasonably could have concluded that Father is better positioned to meet the children's emotional and physical needs and can provide the children with a more stable home environment. *See Holley*, 544 S.W.2d at 371–72; *In re A.L.E.*, 279 S.W.3d 424, 428–30 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (holding parent's drug and alcohol abuse constituted material change supporting custody change); *Duggan v. Duggan*, 446 S.W.2d 727, 728 (Tex. App.—Houston [14th Dist.] 1969, no writ) (noting mother was "running

---

[3] In her appellate brief, Mother asserts "the trial court further abused its discretion when [Mother] was denied an expanded standard possession order and burdened with an injunction prohibiting her to drive without a driver's license." Other than this sentence, Mother does not discuss the issue. She does not provide any legal argument as to why the trial court abused its discretion in denying her expanded standard possession or issuing an injunction. Nor does Mother provide any citations to legal authority. Even construing Mother's brief liberally, we cannot conclude she has briefed this issue adequately. *See San Saba Energy, L.P. v. Crawford*, 171 S.W.3d 323, 337 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

around with other men" and child was forced to attend a wild party).

The evidence in the record is legally and factually sufficient to support the trial court's determination that it is in the children's best interests for Father to designate the children's primary residence. *See Cain*, 2007 WL 4200638, at *4. After reviewing the evidence in the record, we conclude the trial court did not abuse its discretion in granting Father the exclusive right to designate the children's primary residence. *See id.*

### 2. *Challenge to the Admission of Evidence*

Mother also asserts that the trial court reversibly erred in admitting or considering evidence relating to her immigration status, nationality, and ethnicity. Relevant evidence is generally admissible. Tex. R. Evid. 402; *Farmers Tex. Cnty Mutual Ins. Co. v. Pagan*, 453 S.W.3d 454, 461 (Tex. App.—Houston [14th Dist.] 2014, no pet.). Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *See* Tex. R. Evid. 401. But, a trial court may exclude relevant evidence if its probative value is substantially outweighed by a danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence. Tex. R. Evid. 403; *Pagan*, 435 S.W.3d at 461.

The record reveals that at several points during the trial Father's counsel questioned witnesses regarding Mother's immigration status, inability to speak English, lack of a Texas driver's license, and lack of a Social Security number. Mother objected to this evidence on relevance grounds.[4] The trial court sustained

---

[4] Mother did not raise a constitutional objection to this evidence. To the extent Mother argues the trial court violated her constitutional rights by allowing this evidence to be admitted at trial, Mother did not object to the evidence on those grounds and therefore did not preserve this complaint for appellate review. *See* Tex. R. App. P. 33.1(a); *Levy*, 2013 WL 6237273, at *4.

7

Mother's relevance objections at times, but overruled Mother's relevance objections to testimony that Mother lacked a driver's license and that Mother had attempted to marry her cousin. On appeal, Mother asserts the evidence presented by Father was highly prejudicial. In particular, Mother asserts the evidence had a prejudicial effect on the trial judge's evaluation of her credibility.

As a prerequisite to presenting a complaint for appellate review, a party generally must have presented the complaint to the trial court by timely request, objection, or motion with sufficient specificity to make the trial court aware of the complaint. *See* Tex. R. App. P. 33.1(a); *Gipson-Jelks v. Gipson*, 468 S.W.3d 600, 604 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Mother's objection in the trial court that the evidence was irrelevant did not preserve error on Mother's appellate complaint that the evidence was highly prejudicial or more prejudicial than probable.[5] *See In re R.A.M.*, No. 09-12-00528-CV, 2014 WL 5419994, at *2 (Tex. App.—Beaumont Sept. 4, 2014, no pet.) (holding relevancy objection did not preserve for appellate review complaint under Texas Rule of Evidence 403) (mem. op.); *S. Plains Lamesa R.R., Ltd. v. Heinrich*, 280 S.W.3d 357, 364 (Tex. App.—Amarillo 2008, no pet.) (same); *In re D.W.A.*, No. 01-02-00745-CV, 2003 WL 21546105, at *6 n.4 (Tex. App.—Houston [1st Dist.] Jul. 10, 2003, no pet.) (same) (mem. op.). Accordingly, Mother did not preserve error in the trial court as to her complaint that the evidence was highly prejudicial or more prejudicial than probable. *See In re R.A.M.*, 2014 WL 5419994, at *2; *S. Plains Lamesa R.R., Ltd.*, 280 S.W.3d at 364; *In re D.W.A.*, 2003 WL 21546105, at *6 n.4.

---

[5] To the extent that Mother asserts on appeal that the trial court violated her due process or equal protection rights, Mother did not voice any such complaint in the trial court and therefore did not preserve error. *See* Tex. R. App. P. 33.1(a); *Levy v. CACH, L.L.C.*, No. 14-12-00905-CV, 2013 WL 6237273, at *4 (Tex. App.—Houston [14th Dist.] Dec. 3, 2013, pet. denied) (mem. op.) (holding party waived due-process claim by failing to object in trial court.) *See also In re J.F.C.*, 96 S.W.3d 256, 274 (Tex. 2002) (preservation-of-error rules apply in cases involving child custody).

Having considered and rejected Mother's arguments under her first issue, we overrule Mother's first issue.

## B. Property Division

In her second issue, Mother asserts the trial court abused its discretion in awarding a disproportionate amount of the community property to Father. In support of this contention, Mother makes the following complaints on appeal:

(1) the trial court divided the IRS debt between the parties even though Father filed his tax return as "single;"

(2) the trial court divided the OSHA debt between the parties even though Father was the sole manager of the business that incurred the debt;

(3) the trial court ordered that the parties sell the marital home and divide any proceeds even though both Father and Mother recommended awarding the marital home and mortgage to Mother; and

(4) Mother received a "negative community estate" while Father received W.M. Contractors, which had gross receipts of $1,114,620 between 2009 and 2011.

Mother argues that Father is not entitled to what she alleges is a greater share of the community property for reasons including Father's greater earning potential, adultery, and use of community funds to support a child born out of wedlock. Mother asserts the trial court gave Father a greater share of the community property because the court improperly considered Mother's immigration status.

When dividing property between two divorcing spouses, the trial court is required to "order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." Tex. Fam. Code Ann. § 7.001 (West, Westlaw through 2015 R.S.); *Murff v. Murff*, 615 S.W.2d 696, 698 (Tex. 1981). We will not disturb the property division on appeal unless the appellant demonstrates that the trial court clearly abused its discretion by a division or an order that is manifestly

9

unjust. *Sharma v. Routh*, 302 S.W.3d 355, 360 (Tex. App.—Houston [14th Dist.] 2009, no pet.). In reviewing the trial court's property division, we must consider (1) whether the trial court had sufficient information upon which to exercise its discretion and (2) whether the trial court abused its discretion by dividing the property in a manner that is manifestly unjust and unfair. *Evans v. Evans*, 14 S.W.3d 343, 346 (Tex. App.—Houston [14th Dist.] 2000, no pet.). We are to resolve every reasonable presumption in favor of a proper exercise of discretion of the trial court in dividing the property of the parties. *Welch v. Welch*, 694 S.W.2d 374, 376 (Tex. App.—Houston [14th Dist.] 1985, no writ). In *Murff*, the Supreme Court of Texas identified various factors that the trial court may consider when dividing the community property. *Murff*, 615 S.W.2d at 698–99. These factors include the nature of the community property, the relative earning capacity and business experience of the spouses, their relative financial condition and obligations, their education, the size of the separate estates, the age, health, and physical conditions of the parties, fault in breaking up the marriage, and the benefit the spouse not at fault would have received had the marriage continued. *Id.* at 698–99.

The trial court determined the following assets and liabilities were community assets and community liabilities:

| Assets/Liabilities | Net Equity | Party Awarded Property |
|---|---|---|
| 6619 Lower Arrow Drive | -$23,976.00 | The trial court ordered the parties to sell the property and split any proceeds equally between Mother and Father. |
| Cash on hand | $500 | Father |
| 2007 Ford F150 | -$2,000 | Father |
| 2006 Chevrolet Cobalt | $6,000 | Mother |
| Household furnishings | $14,100 | Mother |
| Jewelry | $9,800.00 | Mother |
| W.M. Contractors | $0 | Father |
| IRS debt | -$41,226.58 | Split equally between Mother and Father |
| OSHA fines and penalties | -$10,485 | Split equally between Mother and Father |

Under these findings, the trial court awarded Mother a greater share of the community estate than it awarded Father, and the trial court split the community liabilities equally between the parties.

Mother makes a statement in her appellate briefing that W.M. Contractors had gross receipts of $1,114,620 between 2009 and 2011. Mother has not briefed a challenge to the sufficiency of the evidence supporting the trial court's finding regarding the value of W.M. Contractors, but we address Mother's argument to the extent her statement can be construed as an attack on the trial court's finding that W.M. Contractors had a value of $0.

As the factfinder, the trial court alone determines the credibility of the evidence and the witnesses, the weight to give their testimony, and whether to accept or reject all or any part of their testimony. *Villalpando v. Villalpando*, 480 S.W.3d 801, 806 (Tex. App.—Houston [14th Dist.] 2015, no pet.). The trial court's finding was supported by evidence. First, Father testified that although W.M. Contractors had gross receipts of $1,114,620, the company's expenses included expenses for materials, labor, and employees. Father testified that between 2008 and 2010, he had up to thirty employees. Evidence that W.M. Contractors had gross receipts of $1,114,620 is not evidence of its value.

Second, the record contains evidence that W.M. Contractors did not have gross receipts of $1,114,620 at the time of trial. Father explained that his business was currently very slow because two on-the-job fatalities significantly limited the type of work clients would hire him to perform. The first fatality occurred at the end of 2011 and the second fatality occurred in April 2012. Father testified that after these incidents his work "dried up" because he had performed work for schools and it is difficult for schools to hire contractors that have had project fatalities occur. Father testified that since the second incident he has not had any large projects. Father had to fire several employees and now works with only four or five people. At trial, Father testified that W.M. Contractors had not had any work within the past month. Father also testified that his debts exceeded his income. The record shows Father had taken a second job bartending in addition to working for W.M. Contractors. On Father's proposed distribution of the assets, which was admitted into evidence, Father listed business equipment as an asset, but did not list W.M. Contractors as either an asset or a liability. The record does not contain evidence supporting Mother's valuation of W.M. Contractors at $150,000. Based on the record evidence, the trial court reasonably could have

12

found that the value of W.M. Contractors was $0.  *See id.*

Mother argues that both Mother and Father proposed awarding the marital home and mortgage to Mother, but it is unclear how that award would help Mother given the trial court's finding of fact that the debt on the marital home exceeded the home's fair market value.  Mother has not challenged this finding of fact.

Mother points out that Father filed income taxes and controlled his business, but the trial court found the IRS and OSHA debts were community liabilities. Although Father filed his tax return as "single," the record shows that Mother did not file a separate tax return and that Father did not have a sophisticated understanding of how to file income tax returns.  Furthermore, the record reveals that the IRS debt was incurred in years where Father and Mother were married and both failed to file any type of income tax return.  Mother does not articulate any argument that the trial court erred in characterizing the IRS debt as community property nor did she voice any such complaint in the trial court.  Similarly, the trial court characterized W.M. Contractors as community property and characterized the associated OSHA debt as a community liability.  While Mother points out that Father owned and operated W.M. Contractors, the record reveals that Father owned and operated W.M. Contractors while Father and Mother were married. Mother does not assert that either W.M. Contractors is Father's separate property or the OSHA debt is Father's separate liability.  Accordingly, both of these complaints appear to be equitable arguments as to why the trial court should award Mother a greater share of the community property than Father.

Given the trial court's property characterization and value determinations, Mother's contention that the trial court awarded Father a greater share of the community estate is not supported by the record.  Thus, even presuming for the sake of argument that Mother is entitled to a greater share of the community estate,

13

the trial court appears to have awarded Mother a greater share of the community estate. *See id.* at 307–09. Having rejected all of Mother's arguments under her second issue as lacking in merit, we overrule Mother's second issue.

## III. CONCLUSION

The trial court did not abuse its discretion in awarding Father the exclusive right to designate the children's primary residence. The trial court did not abuse its discretion in its division of the community estate. Having overruled Mother's issues, we affirm the divorce decree.


/s/    Kem Thompson Frost
Chief Justice


Panel consists of Chief Justice Frost and Justices Boyce and Wise.