

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-20-00092-CV

Mitchell **PATTERSON**,
Appellant

v.

Gloria A. **PATTERSON**,
Appellee

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2019-CI-10579
Honorable Laura Salinas, Judge Presiding

Opinion by:   Liza A. Rodriguez, Justice

Sitting:   Rebeca C. Martinez, Chief Justice
   Irene Rios, Justice
   Liza A. Rodriguez, Justice

Delivered and Filed: August 11, 2021

AFFIRMED

Mitchell Patterson appeals from the final decree of divorce, arguing that the trial court

abused its discretion in dividing the marital estate, awarding Gloria Patterson spousal maintenance,

and calculating the amount of Gloria Patterson's spousal maintenance award.[1] We affirm.

---

[1] In appellee's brief, appellee urges this court to "reject" appellant's appeal because of "appellant's missed brief due date." Appellee's request is denied. We will consider appellant's appeal on the merits.

**DIVISION OF MARITAL ESTATE**

In his first issue, Mitchell argues that the trial court abused its discretion by disproportionately dividing the marital estate of the parties. "In a decree of divorce or annulment, the court shall order a division of the estate of the parties in a manner that the court deems just and right, having due regard for the rights of each party and any children of the marriage." TEX. FAM. CODE § 7.001. In making a "just and right" division, a court may consider the following non-exclusive factors: (1) the parties' capacities and abilities; (2) the parties' relative needs and financial condition; (3) the parties' relative fault in ending the marriage; (4) the benefits the party without fault would have received had the marriage continued, as well as the parties' relative physical conditions; (5) future business prospects; and (6) disparity in age, separate estates, education, and the nature of the property to be divided. *See Murff v. Murff*, 615 S.W.2d 696, 699 (Tex. 1981); *Young v. Young*, 609 S.W.2d 758, 762 (Tex. 1980). In balancing these factors and determining the "just and right" division of the estate, the trial court need not divide the marital estate equally, but it must divide the marital estate equitably. *Chafino v. Chafino*, 228 S.W.3d 467, 473 (Tex. App.—El Paso 2007, no pet.). That is, if a trial court makes an unequal division, it must have a reasonable basis for doing so. *Id*.

We reverse a trial court's division only for abuse of discretion. *Murff*, 615 S.W.2d at 698. In reviewing the division of a marital estate, we may not substitute our own discretion for that of the trial court. *See McKnight v. McKnight*, 543 S.W.2d 863, 866 (Tex. 1976). Thus, we bear in mind that the "trial court in a divorce case has the opportunity to observe the parties on the witness stand, determine their credibility, evaluate their needs and potentials, both social and economic." *Murff*, 615 S.W.2d at 700. "As the trier of fact, the court is empowered to use its legal knowledge and its human understanding and experience." *Id*. "Although many divorce cases have similarities, no two of them are exactly alike." *Id*. "Mathematical precision in dividing property in a divorce is

usually not possible." *Id*. Thus, "[w]ide latitude and discretion rests in these trial courts and that discretion should only be disturbed in the case of clear abuse." *Id*. That is, the "division should be corrected on appeal only where an abuse of discretion is shown in that the disposition made of some property is manifestly unjust and unfair." *Bradshaw v. Bradshaw*, 555 S.W.3d 539, 543 (Tex. 2018) (citation omitted). "The appellate court cannot merely reweigh the evidence." *Id*.

Finally, when, as here, the trial court does not file its findings and conclusions, its distribution of the estate must be affirmed if there is any basis in the record to support its decision. *Rosemond v. Al–Lahiq*, 331 S.W.3d 764, 766 (Tex. 2011).[2] All necessary fact findings in support of the trial court's judgment are implied. *Id*.

At trial, there was evidence that Mitchell and Gloria had been married twenty-two years. Sixty-three-year-old Gloria testified she is disabled and is no longer able to work. According to Gloria, until 2015, she worked at home care, but does not have any retirement. Gloria testified that Mitchell was also disabled as a result of a motorcycle accident. Both Gloria and Mitchell receive social security disability payments, and Mitchell also receives VA disability payments.

The evidence showed that the marital estate consisted of a house purchased during the marriage, two vehicles with no lien holders, an annuity from the Louisiana Carpenters Supplemental Retirement Fund, a pension fund from Louisiana Carpenters Pension Fund, and debt in the amount of $50,000.

---

[2] In his brief, Mitchell states that he requested findings of fact from the trial court and no findings of fact were made by the trial court. Mitchell, however, has not brought an appellate issue that the trial court erred in not making findings of fact; therefore, any error by the trial court in failing to make findings of fact has been waived on appeal. *See* TEX. R. APP. P. 38.1(i). Moreover, even if Mitchell's brief raised the issue that the trial court erred in failing to issue findings of fact and conclusions of law, the clerk's record does not reflect that Mitchell filed notice of past due findings of fact and conclusions of law as required by Texas Rule of Civil Procedure 297. *See* TEX. R. CIV. P. 297. Accordingly, Mitchell failed to preserve the issue for appeal. *See Sonnier v. Sonnier*, 331 S.W.3d 211, 214 (Tex. App.—Beaumont 2011, no pet.); *see also Redd v. Redd*, No. 13-15-00467-CV, 2017 WL 3304151, at *3 (Tex. App.—Corpus Christi-Edinburg Aug. 3, 2017, no pet.).

*A. Marital Home*

Regarding the marital home, Mitchell testified that he believed the fair market value of the home was $165,000. He testified the home needs a foundation leveling, which he had two quotes for $17,000 to repair. He also claimed that there were twenty-eight holes in the wall from picture hangers that were ripped out by Gloria and that he had received an estimate of $11,000 to fix various things. Mitchell testified that he believed the house needed $50,000 in repairs. He testified the balance on the first mortgage was $90,000, and the balance on the second mortgage was $17,000. In his opinion, there was only $13,000 in equity in the home.

Gloria agreed that the fair market value of the home was $165,000. However, she testified the home did not need the extensive repairs claimed by Mitchell. She agreed the foundation needed repair, but testified that the rest claimed by Mitchell was normal wear and tear. Gloria testified that when she left the home, all the pictures were on the wall, so if there were holes in the sheetrock, it was due to Mitchell's actions. She had no explanation as to why Mitchell would say repairing sheetrock in the home would cost $11,000. Gloria's inventory, which was introduced in evidence, stated that the current balance of the first mortgage was $69,588.85. She testified the balance remaining with regard to the second mortgage was $16,939.98. After deducting the two mortgages and the cost of the foundation repair from the fair market value, she and Mitchell had approximately $61,471.17 remaining in equity in the marital home.

In its final decree, the trial court ordered the sale of the residence, with forty percent of the net proceeds to be distributed to Mitchell and sixty percent of the net proceeds to be distributed to Gloria.

### B. Two vehicles

Mitchell testified he was in possession of a 2007 Dodge Ram. Gloria testified that she was in possession of a 2007 Hyundai Santa Fe. Neither vehicle had a lien holder. In the final decree, Gloria was awarded the 2007 Hyundai Santa Fe, and Mitchell was awarded the 2007 Dodge Ram.

### C. Louisiana Carpenters Supplemental Retirement Fund Annuity

Mitchell testified that during the course of the marriage, he worked for various different unions and accumulated many annuities over the years. Approximately twenty of those annuities were rolled into an annuity with the Louisiana Carpenters Supplemental Retirement Fund, which contained approximately $110,000. In its final decree, the trial court awarded 100% of the Louisiana Carpenters Supplemental Retirement Fund to Gloria. From this fund, the trial court ordered Mitchell to pay Gloria spousal maintenance and her attorney's fees. The trial court also awarded to Gloria all annuities not disclosed by Mitchell.

### D. Louisiana Carpenters Pension Fund

Mitchell testified he also received a monthly pension of $500. The trial court awarded 100% of this pension to Gloria.

### E. Debt

Mitchell testified about debt in the amount of $50,000, including a medical bill to Brooke Army Medical Center in the amount of $19,764.46 arising out of a motorcycle accident in which he suffered injuries. Gloria testified to bills in her name in the amount of $2,000. In the final decree, the trial court ordered Mitchell to pay creditors approximately $50,000. Gloria was ordered to pay all debts incurred solely by her after May 25, 2019, the date Gloria and Mitchell separated.

*F. Other Income*

Mitchell testified that he receives VA disability in the amount of $1,100 per month, and social security disability in the amount of $2,000 per month. An exhibit introduced in evidence shows that Mitchell receives social security benefits in the amount of $2,384.90 per month. Gloria testified that she receives social security disability in the amount of $1,131 per month. The trial court's judgment states that the parties own their respective disability benefits.

*G. Evidence Supporting Disproportionate Award*

In its final decree, the trial court awarded Gloria a disproportionate share of the estate, declaring the division was "just and right." The following evidence at trial supports this decision by the trial court. Gloria testified at trial that when she and Mitchell separated, he refused to allow her entry to the marital home. She was forced to ask friends for shelter and, at other times, to live in her car. At a pretrial hearing on temporary orders, Judge Karen Pozza ordered Mitchell to allow Gloria to live in the home during the pendency of the divorce. Gloria testified when she arrived at the house, Mitchell had changed all the locks and put knobs on the interior doors requiring a key to enter. Thus, Gloria had no access to any of the bedrooms or her office. According to Gloria, Mitchell told her that she was only allowed to be in the family room and was required to sleep on the sofa. Gloria testified that she was not allowed to watch television in the family room, and Mitchell took the remote control. Mitchell also imposed a 9:00 p.m. curfew and would lock Gloria out of the home if she did not arrive by 9:00 p.m. Gloria testified that she left the home because of the conditions Mitchell imposed and because of his intimidating behavior. Gloria testified that Mitchell told her she was an uninvited guest in his home and he wanted her out. She testified that she "overheard him speaking to one of his friends that he was going to start sleeping with a gun under his pillow." Gloria testified that she felt threatened and that she needed to leave for her safety. Gloria stayed in the home only one night. She either stayed with friends or slept in her car.

And, according to Gloria, when she stays with friends, she still "pay[s] rent." She does not "live for free."

Gloria further testified that Mitchell would not allow her to pack her belongings. He determined what items she should have and put them in trash bags in the garage. When Gloria called the sheriff's office, she was told they could not do anything to help her gain entry into the home because "it was a civil matter." Gloria also testified that Mitchell threw away her medical records. Gloria has an "an inoperable tumor on [her] left ear" that is supposed to be monitored. Because Mitchell threw away all her medical records she does not have the "CD to keep monitoring the growth of it." Gloria testified that she has "very bad arthritis" and cannot walk too much because her "knees hurt very bad." She fell in 2015 because of her "vertigo with [her] tumor" and broke five ribs. Because of her disability, she is unable to work. Nor does she have a retirement fund.

Gloria testified that she wanted a divorce because she had "been socially [and] emotionally . . . abused." Gloria testified that if she and Mitchell went out in public, "he made it a point to degrade me in front of everybody." She testified her friends would not come to their house because they could not tolerate the way Mitchell talked to her. She testified Mitchell never treated her as a wife, but as a servant. Further, Mitchell had an affair during the marriage, which resulted in a child being born to another woman. Mitchell was ordered to pay child support for the child.

Gloria further testified that she did not believe Mitchell had been forthcoming about all his assets. According to Gloria, Mitchell had a binder "that was his Bible and he would lock it up in his safe so [she] wouldn't have access to it." Gloria testified she has never had that binder and that Mitchell had all the information about his annuities in the binder.

In considering the non-exclusive *Murff* factors, there was evidence that both Gloria and Mitchell are disabled. *See Murff*, 615 S.W.2d at 699 (permitting trial court to consider parties'

relative physical conditions). However, they receive different disability amounts. Mitchell receives VA and social security disability payments in the amount of $3,484.90 per month while Gloria receives social security disability in the amount of $1,131 per month. *See id.* (in making unequal division, allowing trial court to consider disparity of separate estates). Further, while both Mitchell and Gloria worked during their marriage, Gloria did not have any retirement funds while Mitchell had both an annuity and a pension. *See id.* (allowing trial court to consider the parties' relative needs and financial condition). There was also evidence of Mitchell's fault in ending the marriage, including having an affair that resulted in a child being born from another woman and treating Gloria in a disrespectful manner. *See id.* (permitting trial court to consider the parties' relative fault in ending the marriage). Had Mitchell not been at fault in ending the marriage, Gloria could have expected to receive benefits from Mitchell's annuity and pension. *See id.* (allowing trial court to consider "the benefits the party without fault would have received had the marriage continued"). Finally, the trial court could consider Mitchell's behavior after he and Gloria separated, including barring her from entering the marital home; changing the locks on the exterior and interior doors even after being ordered by a judge to permit Gloria to live in the marital home; placing restrictions on Gloria's ability to move around the home; telling Gloria she was an uninvited guest in the home and acting in a threatening manner towards her; not allowing Gloria to pack her belongings. Given the above evidence, we find no abuse of discretion in the trial court's division of the marital estate.

**SPOUSAL MAINTENANCE**

### A. *Spousal Maintenance Tried by Consent*

Mitchell first argues that the trial court erred in awarding Gloria spousal maintenance because her pleadings did not support such an award. Generally, a trial court's judgment must conform to the pleadings. *Flowers v. Flowers*, 407 S.W.3d 452, 457-58 (Tex. App.—Houston [14th Dist.] 2013, no pet.); *see also* TEX. R. CIV. P. 301. However, "[i]f issues not raised by the

pleadings are tried by express or implied consent of the parties, these issues shall be treated as if they had been raised by the pleadings." *Flowers*, 407 S.W.3d at 458; *see also* TEX. R. CIV. P. 67, 301. "To determine whether the issue was tried by consent, we must examine the record not for evidence of the issue, but rather for evidence of trial of the issue." *Flowers*, 407 S.W.3d at 458. An issue is tried by consent when evidence is presented on an issue and that issue is developed during the trial without objection. *See Lajzerowicz v. Lajzerowicz*, No. 04-16-00491-CV, 2018 WL 626593, at *3 (Tex. App.—San Antonio Jan. 31, 2018, pet. denied) (mem. op.); *see also In re J.O.*, 04-19-00381-CV, 2019 WL 6719029, at *4 (Tex. App.—San Antonio Dec. 11, 2019, no pet.).

Here, Gloria's pleadings did not request spousal maintenance. However, during Gloria's opening statement, her attorney requested a spousal maintenance award: "And we are asking for a disproportionate share of the community property. *We're asking for spousal support*." (emphasis added). At no time did Mitchell object to an award of spousal maintenance. During cross-examination, Mitchell was asked if he was willing to pay Gloria any spousal support. He responded, "I can't afford it. You know it. She knows it." During Gloria's testimony, she testified that she was asking Mitchell to pay her spousal support. At the close of trial, the trial court asked Gloria's attorney what income he was asking for the spousal support to be paid. Gloria's attorney replied that section 8.055(e) of the Family Code allowed the trial court "to take alimony out of any retirement benefits, pension, trust, or annuities." At no time did Mitchell's attorney object to an award of spousal maintenance not being raised by Gloria's pleadings. We therefore hold that the issue of Gloria being awarded spousal maintenance was tried by consent.

### B. *Calculation of Spousal Maintenance Award*

Mitchell next complains for the first time on appeal that the trial court abused its discretion in calculating Gloria's award of spousal maintenance pursuant to section 8.055 of the Family Code. Specifically, Mitchell complains that the spousal maintenance included an award for a lump sum

payment. Mitchell did not raise this issue in any post-judgment filings or otherwise bring the issue before the trial court and obtain a ruling. Therefore, he has not preserved any error for appeal. *See* TEX. R. APP. P. 33.1; *Crider v. Crider*, No. 01-10-00268-CV, 2011 WL 2651794, at *3 (Tex. App.—Houston [1st Dist.] July 7, 2011, pet. denied) (holding appellant's complaint about spousal maintenance award violating section 8.055 of the Family Code was not preserved for appeal because appellant raised the issue for the first time on appeal and "did not raise this issue in his post-judgment filings or otherwise bring the issue before the trial court and obtain a ruling").

## CONCLUSION

For the reasons stated above, we affirm the trial court's final decree of divorce.

Liza A. Rodriguez, Justice