**Affirmed and Memorandum Opinion filed December 6, 2018.**



In The

# Fourteenth Court of Appeals

## NO. 14-16-00856-CV

### MBOMETTE ASUQUO UDOBONG, Appellant

### V.

### VERONICA MBOMETTE UDOBONG AND THE OFFICE OF THE ATTORNEY GENERAL OF TEXAS, Appellees

**On Appeal from the 308th District Court
Harris County, Texas
Trial Court Cause No. 2006-45639**

## MEMORANDUM OPINION

This is an appeal from the trial court's order establishing a father's child-support obligations after the trial court pronounced the child-support portion of an earlier divorce decree between the parties void based on the father's petition for bill of review. On appeal from the order decreasing the father's child-support obligation from the amount set in the voided part of the divorce decree, the father argues that: (1) the trial court's retroactive child-support award (covering the time between the

divorce decree and the order from which this appeal is taken) did not conform to the mother's pleadings, and was not tried by consent, (2) the trial court erroneously denied the father a credit for child support that he already had paid, (3) the evidence is legally insufficient to support the trial court's finding that the father intentionally was underemployed, and (4) the trial court erred in ordering the father to pay $1,000 per month in retroactive child support because there was no trial evidence that his monthly net resources were $2,857. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Appellant Mbomette Udobong and Appellee Veronica Mbomette Udobong married in 1993. The couple had four children. Then, in 2006 Veronica filed a divorce petition and sought to be appointed sole managing conservator of the children. Veronica asked the court to order Mbomette to make child-support payments. In 2008, appellee The Office of the Attorney General of Texas intervened in the divorce proceeding requesting that "the court make appropriate orders for conservatorship, and to order current, retroactive, and medical child support for the children. . . ." The trial court did not order that any party make child-support payments before the trial court rendered the divorce decree.

The trial court signed a "Final Decree of Divorce" on April 9, 2010, purporting to adjudicate all issues in the divorce proceeding, including child support. In the divorce decree, the trial court ordered Mbomette to pay $1,500 per month in child support starting on the date of the decree. The trial court also ordered Mbomette to pay a total principal amount of $22,800 in retroactive child support for the period between the filing of the divorce petition and the date of the divorce decree, to be paid in payments of $500 a month.

After the 2010 divorce decree, Mbomette fell behind in making his child-

2

support payments, and he petitioned the trial court for bill-of-review relief.

*The Bill-of-Review Proceedings*

In 2013, Mbomette filed a petition for bill of review seeking to have the child-support portions of the 2010 divorce decree set aside as void on the ground that the trial court's child-support determination had been based on an earnings figure for 2006 and 2007 derived from an Internal Revenue Service ("IRS") tax-lien notice that Mbomette alleged contained incorrect information. Mbomette alleged that the earnings information on file with the IRS had been amended. In place of the order based on these purported earnings, Mbomette requested that the court "order a proper/reasonable child support amount based on his true earnings."

In January 2016, the trial court granted Mbomette's bill of review on the ground he asserted and declared the divorce decree's child-support provisions to be void.[1] By granting this relief, the trial court reopened the part of the divorce proceedings relating to child support. Shortly thereafter, Mbomette filed his Second Amended Counter-Petition, in which Mbomette stated as follows:

> The erroneous tax returns have been amended/corrected and now the Counter-petitioner's wage earning capacity can be correctly established. Left to re-litigate is the child support amount to be paid by Counter-petitioner.
>
> . . .
>
> Counter-petitioner should be ordered to make payments for the support of the children based on Texas Family Code guide lines using his actual wages and to provide medical child support in the manner specified by the Court.

In the amended pleading Mbomette did not allege that any of the children had

---

[1] On appeal no party has challenged the propriety of the trial court's granting of this relief, and we do not address this issue.

been emancipated or whether any credit should be applied to money already paid. Veronica did not file an amended pleading.

*2016 Child-Support Hearing*

At the start of the hearing to determine what child-support provisions should replace the parts of the divorce decree that the trial court had held to be void, the trial court explained that it had granted Mbomette's petition for a bill of review and voided the divorce decree as it pertained to child support. The trial court then asked the parties to state the child-support amounts for which they were advocating. When Mbomette's attorney indicated that the amount of child support that he expected to establish would relate only to the remaining two minor children, Veronica's attorney sought clarification that the order would be retroactive to address Mbomette's child-support obligation in the past. Mbomette's attorney objected that Veronica had not pleaded for retroactive child support. The trial court clarified at the outset of the hearing that it would consider an order providing child support back to the date of the filing of the divorce petition or the answer, but doubted any award would "go back that far."

Before the trial court heard any evidence Mbomette's counsel stated "[t]here's no request for retroactive in the pleadings so we'll object to any evidence whatsoever for retro." But, once the trial court started hearing evidence, Mbomette did not object to any questions or any evidence on the ground that Veronica had no pleading for retroactive child support. Without objection the court heard evidence relevant to Mbomette's child-support obligation before the date on which the trial court signed the divorce decree, the number of minor children, and the dates on which Mbomette's child-suport obligation would cease as to each child. The court heard no evidence as to the amount of any child-support payment Mbomette had made in the past.

4

Veronica testified that Mbomette had paid no child support before the date on which the trial court signed the 2010 divorce decree and that Mbomette had failed to pay the amounts that had been required under the part of the 2010 divorce decree that the trial court held to be void in 2016. No trial evidence established that Mbomette had paid any child support before the date of the 2010 divorce decree, nor did any trial evidence show the amount of any child-support payment that Mbomette paid following the 2010 divorce decree.

Mbomette's counsel cross-examined Veronica about Mbomette's pre-2010 earnings. The court heard testimony about amended 2006, 2007, and 2008 tax returns for Mbomette's company, his employability, and his stated reasons for not earning more. The court made a rendition which the court ultimately memorialized in a final order signed on July 27, 2016.

*Final Order and Appeal*

In the final order the trial court found that Mbomette was (i) intentionally under-employed, (ii) able to provide $1,000 per month in child support from May 1, 2010 through June 30, 2015, and (iii) able to provide $800 per month in child support from July 1, 2015 through June 30, 2016.

In the 2016 order the trial court reduced Mbomette's child-support obligations from the amount set in the 2010 divorce decree, as follows:

1. The trial court did not order Mbomette to pay any amount of child support for the period from July 26, 2006 to April 14, 2010. In the 2010 divorce decree the trial court ordered Mbomette to pay retroactive child-support in the total principal amount of $22,800 for that period.

2. For the period immediately following the divorce decree from May 1, 2010, through June 30, 2015, the court set Mbomette's obligation at $1,000 per month based on four minor children, $500 less a month than the amount set in the 2010 divorce decree for that period.

3. For the period from July 1, 2015, through the month following the

5

court's final order (June 30, 2016), the trial court set Mbomette's obligation at $800 per month based on three minor children, $486 less a month than the amount set in the 2010 divorce decree for that period.

4. For the period from July 1, 2016, through the date on which Mbomette owes support as to only two children, the trial court set Mbomette's obligation at $600 per month, $686 less a month than the amount set in the 2010 divorce decree.

5.For the period during whichMbomette owes support as to only two children, the trial court set Mbomette's obligation at $500 per month, $571 less a month than the amount set in the 2010 divorce decree.

6. For the period during which Mbomette owes support as to only one child, the trial court set Mbomette's obligation at $450 per month, $407 less a month than the amount set in the 2010 divorce decree.

Mbomette filed a motion for new trial, complaining that the court (1) erred in finding that he intentionally was under-employed, (2) abused its discretion in calculating unpaid child support, (3) abused its discretion in excluding evidence of child support that he had paid since the divorce decree, and (4) abused its discretion in setting past and current support on "an arbitrary wage." Mbomette filed a verified motion but attached no evidence to it. Mbomette later filed a motion for supplemental judgment, with attached printouts purporting to show child-support payments from May 1, 2010 to June 30, 2016.

## II. ISSUES AND ANALYSIS

**A.    Did the trial court err in awarding "retroactive" child support for the period commencing on the date of the 2010 divorce decree and running through the date of the final order?**

In his first issue, Mbomette asserts that the trial court erred by awarding Veronica retroactive child support despite her failure to plead for retroactive child support in her petition. The trial court did not sustain any special exceptions to Veronica's petition. We presume, without deciding, that even liberally construing Veronica's petition in her favor, she did not plead for retroactive child support and

6

that in this respect the final order did not conform to the pleadings. *See Horizon/CMS Healthcare Corp. v. Auld*, 34 S.W.3d 887, 897 (Tex. 2000). We now consider whether the parties tried by consent the issue of retroactive child support.

When issues not raised by the pleadings are tried by express or implied consent of the parties, courts treat these issues as if they had been raised by the pleadings. *See* Tex. R. Civ. P. 67, 301; *Flowers v. Flowers*, 407 S.W.3d 452, 458 (Tex. App.—Houston [14th Dist.] 2013, no pet.). To determine whether the parties tried an issue by consent, we must examine the record not for evidence of the issue, but rather for evidence of trial of the issue. *Id*.; *Greene v. Young*, 174 S.W.3d 291, 301 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). The admission of evidence of the unpleaded matter does not mean that the matter was tried by consent if that evidence also relates to the pleaded issues. *Moneyhon v. Moneyhon*, 278 S.W.3d 874, 879 n.6 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

Mbomette failed to object as the trial court heard evidence of Mbomette's pre-existing child-support obligation extending before the 2010 divorce decree, the number of minor children, and the dates on which Mbomette would no longer have an obligation to pay child support as each child. The development of this evidence could not have been confused as to relating to any issue other than retroactive support. *See Richard Nugent & CAO, Inc. v. Estate of Ellickson*, 543 S.W.3d 243, 265 (Tex. App.—Houston [14th Dist.] 2018, no pet.)(finding that parties who objected to some evidence on unpled alter-ego issue during trial, but failed to persist (or get permission for a running objection) as later evidence was presented on the issue, waived their right to complain of the pleading deficiency).

Evidence on the issue of retroactive child support was developed under circumstances indicating that both parties understood the issue to be in play, and Mbomette failed to object to any evidence on the ground that Veronica had not

7

pleaded for retroactive child support. *See Hartford Fire Ins. Co. v. C. Springs 300, Ltd.*, 287 S.W.3d 771, 780 (Tex. App.—Houston [1st Dist.] 2009, pet. denied)(affirming trial court's judgment including unpled issue where the record showed the issue had been tried by consent during the trial). Before the trial court heard any evidence Mbomette's counsel stated "[t]here's no request for retroactive in the pleadings so we'll object to any evidence whatsoever for retro." Mbomette's counsel appears to have been saying that he would be objecting in the future to any evidence regarding retroactive child support. But, once the trial court started hearing evidence, Mbomette did not object to any questions or any evidence on the ground that Veronica had no pleading for retroactive child support. Even if the initial statement somehow constituted a present objection, Mbomette's counsel did not obtain a ruling on it. Nor did Mbomette get permission for a running objection as to any evidence of retroactive child support. Mbomette did not prevent, but participated in, the trial of the retroactive-child-support issue. *See id.*

The only relevant case that Mbomette has cited in connection with the issue of a trial by consent is *Flowers v. Flowers*. 407 S.W.3d 452, 458 (Tex. App.—Houston [14th Dist.] 2013, no pet.). The *Flowers* court found no evidence that the unpleaded issue had been tried. *See id.* In this case, the parties were on notice before any evidence was presented at the bench trial that the trial court was considering whether to award Veronica retroactive child support, just as the court had in the 2010 decree that was later voided. Veronica presented evidence relevant to this issue (and not relevant to pleaded issues) at trial without objection. Thus, the *Flowers* case is not on point. *See id.* Because the parties tried by consent the issue of Veronica's entitlement to retroactive child support, we overrule Mbomette's first issue. *See Richard Nugent & CAO, Inc.*, 543 S.W.3d at 265; *Hartford Fire Ins. Co., Ltd.*, 287 S.W.3d at 780.

8

**B. Did the trial court err in finding that Mbomette was intentionally underemployed?**

In his third issue, Mbomette complains that the trial court erred in finding that he intentionally was underemployed and therefore erred in relying on earning potential rather than actual earnings in calculating Mbomette's child-support obligation. Mbomette asserts the evidence is legally insufficient to support the trial court's intentional-underemployment finding. Mbomette argues that he cannot earn as much as he has earned in the past because of a Family Violence Protective Order issued against him in 2006 and because his business was listed in the "Misconduct Register" in 2008 as a result of his confrontation with a patient in his health care business.

We review a trial court's order setting or modifying child support under an abuse-of-discretion standard. *Worford v. Stamper*, 801 S.W.2d 108, 109 (Tex. 1990) (per curiam). The test for abuse of discretion is whether the trial court acted arbitrarily or unreasonably, that is, without reference to guiding rules and principles. *Id.* In making this determination, we must view the evidence in the light most favorable to the trial court's rulings and indulge every legal presumption in favor of the judgment. *Holley v. Holley*, 864 S.W.2d 703, 706 (Tex. App.—Houston [1st Dist.] 1993, writ denied). We do not treat allegations of legal and factual insufficiency as independent grounds of error in this context because the appropriate standard of review is abuse of discretion. *Beaumont Bank, N.A. v. Buller*, 806 S.W.2d 223, 226 (Tex. 1991). A trial court abuses its discretion as to legal issues when it fails to analyze or apply the law correctly. *Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992).

A court may apply support guidelines based on an obligor's earning potential (rather than the obligor's actual income) if the court finds "the actual income of the obligor is significantly less than what the obligor could earn because of intentional

unemployment or underemployment." Tex. Fam. Code Ann. § 154.066 (West, Westlaw through 2017 1st C.S.); *Iliff v. Iliff*, 339 S.W.3d 74, 81 (Tex. 2011). The court must engage in a case-by-case determination to decide whether child support should be set based on earning potential as opposed to actual earnings. *Id.* Once the obligor has offered proof of the obligor's current wages, the obligee bears the burden of demonstrating that the obligor is intentionally unemployed or underemployed. *Id.* The burden then shifts to the obligor, if necessary, to offer evidence in rebuttal. *Id.*

Mbomette presented evidence of check stubs showing his earnings as a security guard for the seven months leading up to the hearing, and tax returns for three years leading up to the 2016 hearing showing annual income of $15,350 (2013), $13,400 (2014), and $9,900 (2015). For the years 2006, 2007, and 2008, Veronica maintained, as she had at the 2010 trial, that their health care business produced income for their family in excess of $1,000,000. Mbomette testified that he made about $23,000 during those years.

Veronica also testified that Mbomette was awarded a property in the divorce decree which he previously rented out for roughly $1,000 per month. She also testified that her children had reported that Mbomette owned or managed other income-producing properties. Mbomette testified that he had no income from properties following the divorce.

The trial court heard testimony that Mbomette held a master's degree in "business and education," another master's degree in "education" and a Ph.D. in "higher education management." Mbomette admitted that he had experience teaching, and acknowledged that teaching was his "main job" before the health care business. Rather than providing documentary proof, Mbomette asked the court to take him at his word that he had applied for teaching jobs, but was refused, and that because his name was listed in the "Misconduct Register," he could not obtain

employment in the education sector. Mbomette cited no specific potential employer that refused him employment.

Mbomette does not attempt to justify his low earnings on the basis of some "laudable intentions," or "other objectives." *See Iliff v. Iliff*, 339 S.W.3d 74, 82 (Tex. 2011)(describing various acceptable reasons (listing some under the phrase "laudable intentions" and listing others under the phrase "other objectives") that an obligor may proffer as rebuttal evidence to a claim of intentional unemployment or underemployment). Mbomette's only rebuttal argument is that he has impaired ability to gain more lucrative employment resulting from the family-violence protective order and his name being placed in the "Misconduct Register." Mbomette claims Veronica caused his name to be entered into a "Misconduct Register" kept by the Texas Board of Human Health Services. He provided no evidence that any specific school or school district or other potential employer outside the medical care facility industry would deem this inclusion in the registry to be a basis for disqualification. The court refused to admit into evidence Mbomette's misconduct record (and Mbomette has not challenged that evidentiary ruling), so we may not consider that record in determining whether the evidence is legally sufficient to support the trial court's finding that Mbomette was intentionally underemployed.[2]

In his reply brief, Mbomette argues that his scenario materially differed with that of the obligor in *Iliff v. Iliff*. *See id*. In *Iliff*, the court heard testimony that the obligor, with "a B.S., an M.B.A. and almost twenty years' experience in the chemical industry," had left a job paying over $100,000 a year for a rent-free life with little to no work. The trial court in *Iliff* heard evidence that the obligor had possible alcohol

---

[2] In any event, this record does nothing to advance Mbomette's version of the facts.

11

abuse and psychological issues and that he lacked the commitment to resolve them. In *Iliff*, the record contained little evidence that the obligor had sought other comparable employment, and the evidence showed he spent of his much time reading and watching television. To distinguish himself from the obligor in *Iliff*, Mbomette directs the court to "13 of his current income stubs" which he contends establish that he "did not sit idle watching television." Even if his pay stubs show that Mbomette did not sit idle watching television, these stubs cover only seven months of the six to ten years in question. Though Mbomette is not a mirror image of the obligor in *Iliff*, the similarities are clear. Like the obligor in *Iliff*, Mbomette is neither incapacitated nor incompetent; he possesses advanced degrees, yet presented little, if any, evidence that he has sought employment consistent with his earning capacity.

Because the trier of fact is in a better position to determine the candor, demeanor, and credibility of the witnesses, we will not substitute our judgment for that of the trial court. *See id*. The trial court's ruling implies that it disbelieved Mbomette's testimony about his ability to find gainful employment. The evidence shows that despite the uncontested fact that the children always lived with Veronica, Mbomette's tax filings show that he claimed a credit for 2014 and 2015, indicating to the IRS that the children lived with him for twelve months of those years. This representation also goes against the contrary provision in the divorce decree conferring Veronica the sole benefit of claiming the credit. Mbomette admitted the statements in the tax filings were false.

The trial court was free to credit Veronica's testimony regarding Mbomette's earning potential and his intentional underemployment, and to disregard Mbomette's testimony on these subjects. The court may have credited Veronica's testimony that Mbomette earned over a million dollars a year as proof that Mbomette has been

earning significantly less than his potential. The court may have considered this circumstance in conjunction with Mbomette's stated experience and qualifications to teach when determining that Mbomette intentionally was underemployed. Under the applicable standard of review, we conclude that the evidence is legally sufficient to support the trial court's finding that Mbomette intentionally was underemployed from 2010 through the date of the 2016 final order, and that the trial court did not abuse its discretion in so finding. Accordingly, we overrule the third issue.

In his reply brief Mbomette purports to make another argument within the scope of his third and fourth issues, citing several cases, including our decision in *Duruji v. Duruji*, to contend that the trial court abused its discretion in not making findings under Texas Family Code 154.130. *Duruji v. Duruji*, 14-05-01185-CV, 2007 WL 582282, at *8 (Tex. App.—Houston [14th Dist.] Feb. 27, 2007, no pet.). Mbomette did not raise this issue in his opening appellate brief and so has waived this complaint. *See id*. (dismissing certain complaints as waived in appellant's briefing); *Tex. Ear Nose & Throat Consultants, PLLC v. Jones*, 470 S.W.3d 67, 84 n.15 (Tex. App.–Houston [14th Dist.] 2015, no pet.) (holding argument was waived when raised for the first time in a reply brief on appeal).

**C. Did the trial court err in ordering retroactive child support of $1,000 because no evidence supports a finding that Mbomette's monthly net resources were $2,857?**

Under his fourth issue, Mbomette argues that the trial court erred in ordering him to pay $1,000 per month in retroactive child support because there was no trial evidence that his monthly net resources were $2,857. By ordering Mbomette to pay $1,000 per month in retroactive child support, the trial court impliedly found that Mbomette's net resources were $2,857 per month during this period. *See* Tex. Fam. Code Ann. § 154.125 (West, Westlaw through 2017 1st C.S.).

13

Because the trial court found that Mbomette intentionally was underemployed, the trial court could base the calculation of Mbomette's net resources on his earning capacity rather than his actual earnings. *See id*. § 154.066 (West, Westlaw through 2017 1st C.S.). Mbomette offered check stubs showing his earnings as a security guard for the seven months leading up to the time of the hearing, and tax returns for three years leading up to the 2016 hearing was $15,350 (2013), $13,400 (2014), and $9,900 (2015). For the years 2006, 2007, 2008, Veronica asserted that their health care business yielded their family an income exceeding $1,000,000. According to Mbomette, he made about $23,000 during those years.

Veronica also testified that Mbomette was awarded property in the divorce which he previously rented out for about $1,000 per month. She also testified that her children had reported that Mbomette owned or managed other income-producing properties. Mbomette testified was that he had no income from properties following the divorce. The trial court heard evidence of Mbomette's credentials, including two master's degrees and a Ph.D. in the education field. Mbomette admitted that teaching had been his primary job before the couple began the health care business. As the fact-finder, the trial court had the discretion to disbelieve Mbomette's testimony as to his net resources, and was not required to accept Mbomette's characterization of his income. *See Iliff*, 339 S.W.3d at 81. Because the trier of fact is in a better position to determine the candor, demeanor, and credibility of the witnesses, we will not substitute our judgment for that of the trial court. *See id*. By its ruling the trial court suggests it disbelieved Mbomette's testimony about his ability to find gainful employment. The trial court reasonably could have concluded that Mbomette had other undisclosed financial resources or income. *See Pavon v. Hernandez*, 14-10-00059-CV, 2011 WL 1631790, at *3 (Tex. App.—Houston [14th

Dist.] Apr. 28, 2011, no pet.) (mem. op.); *Niskar v. Niskar*, 136 S.W.3d 749, 759 (Tex. App.—Dallas 2004, no pet.). Likewise, the trial court impliedly credited Veronica's testimony regarding Mbomette's earning potential and his intentional unemployment and underemployment, and the trial court impliedly disregarded Mbomette's testimony on these matters. The court may have credited Veronica's testimony that Mbomette earned over $1,000,000 a year as proof that Mbomette earned less than he could have earned given his earning potential. Based on the trial evidence the trial court reasonably could have concluded that Mbomette's earning potential was $2,857 during the period that the trial court ordered him to pay monthly child support of $1,000. *See Pavon*, 2011 WL 1631790, at *3; *Niskar*, 136 S.W.3d at 759. The trial court's implied finding that Mbomette's monthly net resources were $2,857 during this time period was based on legally sufficient evidence, and the trial court did not abuse its discretion in determining Mbomette's monthly net resources during this time period. *See Pavon*, 2011 WL 1631790, at *3; *Niskar*, 136 S.W.3d at 759. Accordingly, we overrule the fourth issue.

**D.      Did the trial court abuse its discretion in not giving Mbomette a credit for the child-support payments allegedly made in the past?**

In his second issue, Mbomette argues that the trial court abused its discretion by failing to give him any credit for child support paid to Veronica in the past. Yet, Mbomette did not offer, or attempt to offer, any evidence of any such child-support payments until his motion to supplement the judgment, which he filed after trial and after the trial court rendered its final order. Mbomette did not include a request for an offset in his live pleadings, and the issue of a credit was not tried by consent. Veronica's attorney promptly objected to Mbomette's attempt to offer evidence that he had paid some support, and after the court sustained the objection, Mbomette's attorney abandoned any effort to establish the amount of child support Mbomette had paid in the past. Mbomette made no offer of proof on the subject. Though

Veronica testified that Mbomette had paid some child support, the record contains no evidence as to the amount of child support that Mbomette had paid. The parties did not enter into any stipulation on this point.

Mbomette suggests in his appellate brief that Veronica's acknowledgment that some unspecified payment was made amounts to sufficient proof to require the court to give him a credit. To be considered in an award pertaining to arrearages, the evidence must establish the amount of child-support payments made. *See In Interest of C.D.E.*, 533 S.W.3d 367, 373 (Tex. App.—Houston [14th Dist.] 2015, no pet.)(indicating the court had the power to determine any proper credits on proper proof). Though Mbomette submitted some evidence of his past child-support payments in his supplemental motion for judgment, he filed that motion more than thirty days after the trial court's final order, and the trial court did not grant the motion. Thus, the motion was untimely and cannot form the basis for appellate relief. *See Noshari v. Southwest Service Center, Ltd.*, 2004 WL 210370, at *2 (Tex. App.—Houston [14th Dist.] 2004, no pet.) (mem. op.). Mbomette has not asserted that he did not have evidence of his past child-support payment at the time of trial in 2016 or that he could not have obtained such evidence by the exercise of ordinary diligence.

We conclude that the trial court did not abuse its discretion by failing to give him any credit for child support paid to Veronica in the past. *See Barras v. Barras*, 396 S.W.3d 154, 177 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Therefore, we overrule the second issue.

### III. CONCLUSION

Even if Veronica did not plead for retroactive child support, the parties tried by consent the issue of her entitlement to this relief. Under the applicable standard of review, the evidence is legally sufficient to support the trial court's finding that

Mbomette intentionally was underemployed from 2010 through the date of the 2016 final order, and the trial court did not abuse its discretion in so finding. The trial court's implied finding that Mbomette's monthly net resources were $2,857 during this time period was based on legally sufficient evidence, and the trial court did not abuse its discretion in determining Mbomette's monthly net resources during this time period. Nor did the trial court abuse its discretion by failing to give Mbomette any credit for child support paid to Veronica in the past. Having overruled all of Mbomette's issues, we affirm the trial court's final order.

/s/    Kem Thompson Frost
Chief Justice

Panel consists of Chief Justice Frost and Justice Busby and Wise.

17